17-0061. People of the State of Illinois v. Robert Jones. On behalf of the appellant, Mr. Ackerman. Good morning. On behalf of the appellee, Mr. Manchin. Good morning. Our position is relatively simple and straightforward. We maintain, and I believe the law supports us, as do the facts, that this defendant, Mr. Jones, who is serving the functional equivalent of a life sentence right now, did not get the protection the Illinois federal constitution should afford him. Simply meaning, it is absolutely a requirement under the law that a defense lawyer investigate and prepare for trial. Investigation and preparation necessarily include, if at all possible, discerning what witnesses might be available to be of value to the defense. In this particular case, the post-conviction transcript reflects beyond any doubt that defense counsel was provided, according to the petitioner, and I believe defense counsel who testified during the post-conviction proceedings, that the defendant made available to counsel somewhere between seven and nine names, a couple of phone numbers, a couple of addresses of individuals who were living at the home with H.T. and her mother between approximately 1997 and the year 2000. Why is that important? Because sometime in 1999 or early 2000, and again, defense counsel did nothing to shore up these dates. The defendant, Mr. Jones, returned to Arizona with his family. Somebody was ill at that time, and he was gone for the better part of a year. When he returned, he returned to the same home for a short period of time, and then by 2003, or sure, it could have been late 2002, he moved out, moved to Heartland, went to school to be a registered nurse, graduated, seldom had any contact with H.T. or her mother until he was about to graduate nursing school. At that time, they got back together, they moved to Arizona, and as of 2009, four years later, the defendant is then arrested in Arizona for committing acts in Illinois that would have occurred prior to approximately 2004. So what did the defense lawyer do? Retained lawyer, defendant out on bond, he had his hands full with a defendant who insisted that an expert be retained in order to discern whether there's false memory problems here. The defendant at all times, at all times, denied committing any of the acts involved. The role of defense counsel, the penultimate role is to investigate and prepare. It didn't happen here. This ended up to be a single defense witness case, that individual being the defendant. Did he deny everything? Of course he did. Did the jury accept it? No. Was there any corroboration or defendant's rejection and denials? No. Why not? Because even the stepdaughter, whose name was in the discovery, H.T.'s sister, who said she knew nothing about any, any misconduct by defendant, was never called as a witness. Nor was H.T.'s mother, but H.T.'s mother testified for the prosecution. What would they have testified to? Or the other daughter? This was a small home where there was a single bathroom. H.T.'s bedroom was directly across from the bathroom. Next to H.T.'s bedroom was a bedroom that they built where a friend of H.T.'s mother and her two daughters, who were approximately the same age, slept. And yet nobody heard or saw anything. Is this what you're referring to in your brief as a partial alibi? Yes. Can you just explain what you mean by partial alibi here? He was gone living in Arizona for part of the time. The other part of the time he was living in the Heartland area where he was going to nursing school, and that was from approximately 2002 until he graduated in the spring of 2005. During that time frame, he actually owned property in the Heartland community. That's where he was living and going to school. Defense counsel did nothing to support defendant's version of those events, although they're clearly part of a record. Now, one of the things that occurs to everybody is, wait a second, there was a post-conviction proceeding. Well, at this point in time, the defendant is entitled to a reasonable level of advocacy in the post-conviction proceeding. That is to say, unlike the Sixth Amendment protection that the defendant's entitled to during trial, before trial, and after trial, in post-conviction proceedings, there is no Sixth Amendment guarantee of effective assistance of counsel. You're entitled to a reasonable level of assistance of counsel. In this case, should appointed counsel, starting in 2015 or thereabouts, have sought out witnesses? I don't know. I don't have an answer. There is some law to support the proposition today that in Crankle, post-trial motion cases, appointed counsel does have a responsibility. And if the court would like that particular citation from your brothers in the Second District, I will supply it. Mr. Manchin, in his brief, writes at page 9 that at the post-conviction evidentiary hearing, Mr. Kuehl testified that they made efforts to contact the renters and came up with nothing. It was a cold trail and that the witnesses were just gone. Mr. Kuehl further testified that he spoke with the defendant about hiring an investigator to try to find the renters, but that defendant didn't want to pay for anything else. Do you dispute that that was testified to at the evidentiary hearing? The first part of that, Mr. Kuehl made no effort, by his own admission, to run down any of the witnesses. I asked the court to consider the August 10, 2016 transcript at pages 5 to 8, 62, 86, 87, and 80. I'm sorry, 80, 86, and 87. Because there is Mr. Kuehl testifying during the post-conviction proceedings. Did he even bother trying to locate? No. Well, that's contrary to what is written here. My opponent can speak for himself. You're saying the record doesn't support that statement? I surely do. As far as, I will say one thing. My opponent is quite correct because Mr. Kuehl did say something about not having the funds available to do an investigation or worse, similar words. But whether he actually told the defendant that or not is a different matter. Thank you. May it please the court, counsel, in this case, the defendant raised the claim of ineffective assistance of counsel in a post-conviction position. After an evidentiary hearing, the trial court found that the trial attorney was confident there was no ineffective assistance of counsel shown, and that the defendant could not establish any prejudice. That is supported by the record and should be followed by this court. The defendant's claim in his original brief, reply brief, and again today, is that counsel did absolutely nothing to contact the renters. Justice Harris, that is a direct quote from the record in my brief where he said, we tried to find them, they were just gone. There may be some other statements that he made, I don't recall, but that specific statement, we tried to find them, they were gone, is in the record and is a direct quote from the record. And based upon that testimony, the whole claim that he did not do anything at all to contact his witnesses was properly rejected by the trial court. Because he did, in fact, try to contact these witnesses. And as far as prejudice, the partial alibi is that the defendant was gone from the house at certain times during the course of these years. That evidence was before the jury so that the testimony of the renters, assuming that the defendant's representations are true, would have been cumulative of the evidence already before the jury. Then, as far as prejudice, we really don't know what the renters would say. The case law is clear that when you're claiming ineffective assistance of counsel based on the failure to present a witness, you need evidence from that missing witness. We simply do not have that. We don't have any affidavits from the renters. We don't have any testimony from the renters. We don't know where those renters are today. So for the trial court to rely solely on the defendant's claims in his petition that these witnesses might have testified to something that might have shown it was not in the house at these particular times is simply not enough to show prejudice. In his reply brief, the defendant relies on Dupree to say that affidavits are not required. That's a complete misstatement of Dupree. Dupree is a second-stage dismissal rather than a denial after an evidentiary hearing. In Dupree, the trial court had found that he denied the defendant's petition because he did not have an affidavit from a missing witness. They said, no, the statute says the defendant must support his claims by affidavit or other evidence, and that an affidavit is not required in every case. And in that case where the defendant had presented three signed written statements from the missing witness, they said the court held that those three signed statements was enough without an affidavit from the witness. That is completely contrary to here where we have absolutely nothing from the missing renters. Today in oral arguments, counsel has mentioned the fact that the sister was never called. There was never any claim in the post-conviction petition regarding the sister and ineffective assistance of counsel in not calling the sister. The only claim was that he gave them the names of these renters, these renters were not called, and the claim was that he made absolutely no effort to contact them. There's never anything, to my recollection, mentioning the sister. And the evidence at trial was that there were people in and out of this house, even at times when the defendant committed the offense, but the victim's testimony was that the defendant was careful to molest her at times when there was nobody else in the room or everybody was busy elsewhere. So testimony from the sister that I never saw anything I don't think would have added that much. Mr. Manchur, are you saying then that the fact the sister was not called was not an issue addressed at the hearing? No. The sister was never mentioned. This is the first time you're hearing about it? This is the first time I'm hearing about it. This is the first time I'm also hearing about apparent complaints about inadequate representation by post-conviction counsel, that counsel just mentioned right now that he's entitled to reasonable representation and complaining about wondering why post-conviction counsel did not do more. That, again, is something that's coming up for the first time. Do you know whether Mr. Ackerman is correct when he says that the sister was listed as a witness? I actually do not recall. But again... You have no reason to dispute that. I have no reason to dispute that. And with regards to the expert on false memory, again, the defendant hired a trial preparation expert or a trial practice expert of some kind out of California that was sending e-mails and notices and memos to trial counsel telling him how he should proceed and what theory he should proceed upon and gave him the name of a Dr. London as a false memory expert. Mr. Kuehl testifies, I talked to Dr. London. Dr. London said he saw no evidence of false memory in this case. He made a tactical decision. I'm not going to... The expert also said he was reluctant to testify in this case. And Mr. Kuehl said, I made the tactical decision not to call this expert for fear that what he would say on cross-examination would be damaging to the defense. That is not ineffective assistance of counsel. That is a matter of strategy and judgment after speaking to the expert. And after having spoken to one expert in the field and gotten a statement that there is just nothing there, I do not think that reasonable counsel is required to go to every single memory expert in the country hoping to find something that's going to say, yes, there's false memory here. Having made the inquiry and been told there's nothing here, it's reasonable for him to not proceed any further. He did go to... He did send the defendant to at least one other expert. He sent one expert. He sent the defendant to one expert with regards to sentencing as far as... cross-examination for some sort of psychosexual testing. Yes. Dr. Conner came back... Tong came back and said, out of 12 years of doing this, you're the only third client I've ever had that failed the test. You failed the test. So they decided maybe Conner's not a good idea either. Right? Well, Conner said the defendant... His report said one of the final recommendations was the defendant was not likely to re-offend. No, that's a different doctor. Okay. Conner's the one that wasn't mentioned by the defendant. It was mentioned by the state at the hearing. They cross-examined the defendant. He acknowledges that Conner was somebody that Tong had suggested. Tong, who was a self-taught psychologist, by the way. Yeah. Tong sends him to Conner. Conner comes back with a psychosexual test that says that he's the third person in 12 years that's ever failed the test. So they decided that they didn't want to use Conner. They then send him to Dr. Becker, a psychologist also specializing in psychosexual evaluations and testing. She comes back with a test that says, well, he's got a low level of risk of recidivism, but he has an unusual proclivity for children between the age of 6 and 13, females, and males under the age of 5. So Shkool decided maybe that's not a report I want out there either. Yes. Well, what happened with Hugh Kool was that he was replaced for sentencing. Right. And then somehow between the swapover between Kool and Jackson, the new attorney, the report was lost. So Jackson never, ever saw the report. And the trial court found that that was … Yeah, the court found that it was clearly ineffective assistance in the transfer of information, but that there was no prejudice to the defendant because the report that the two attorneys didn't use was a two-edged sword, so that there's no ineffective, could be no ineffective assistance not presenting it, and that presentation of the information would have had no effect on the judges, on the sentence imposed, given the trial court's, the sentencing judge's findings regarding the reasons for his sentence. Mr. Rachel, what's our standard of review in this case? The general standard of review is that the factual findings give deference to the trial court's factual findings, and that his findings are not to be disturbed unless manifestly erroneous. There is case law that has recently come out that says that when a claim of ineffective assistance of counsel is raised, a de novo standard is applied, taking the trial court's factual findings as true. And so it's not entirely clear what the real standard is, because there's two different standards that are being cited depending on which way the court wants to go. What are the factual disputes in this case where we should apply the manifest way? Well, the only factual dispute, quote, unquote, is the defendant's continued claim that counsel did absolutely nothing to contact the ranchers. That is the only factual dispute. And the only testimony directly on that, I cite my brief where he says, we tried to find them. They were gone. And did the trial court specifically state that it made a credibility finding and found Mr. Toole to be credible in that regard? He made a finding. Let me see if I have a quote from him. I think he did not make an explicit finding that he believed his testimony, but he... Well, your brief at page 9, after what I read to Mr. Afton, the trial court found this testimony to be credible given its findings, quote, it was not known according to the record what, where they went, when they moved on, or that there was really any reasonable, diligent way to locate them, close quote. Yeah. The trial court did not actually use the words, I find the attorney's testimony credible. He just made the statement, it is not known. And my inference from that, what the court said is that he found the testimony, we don't know where they are to be credible because why else would he be saying it was not known where they were. But he did not, Justice Harris, he did not make an explicit statement, I find this testimony to be credible. But the statement is we don't know where they went. You can't make that finding unless you find, you believe the testimony, we don't know where they went. He said he made some efforts to find them and came up with nothing. Correct. He described them as more or less homeless individuals. Correct. And, again, we're looking at the dates of these witnesses are, according to the defendant today, is 1997 to 2000. It was not revealed until four or five years later, so we're trying to find witnesses five, six years after the facts. To basically say I saw nothing. Yeah. Or that the defendant, or we don't know, again, we don't know what they would say. The defendant's representation was that they would testify that they read it from him and he was not in the house at particular points in time. And the fact that he was not in the house at particular points in time was a matter of record. And it was pointed to, and even the victim's mother testified that the defendant was in and out of the house over periods of time. So what the renters really would add is not only unknown, but it would probably be largely cumulative. So if there are no further questions for the court. Proceed, ma'am. All right, thank you. Mr. Ackerman. Thank you. Starting at APP 28, appended to our opening brief, we find that HT's sister, Laura, was living in the house, lived with them from birth until May of 2005. Her statement is attached as part of the post-conviction petition. From APP 28, 29, 30, top of 30, and top of 31, there are the names of witnesses that this man in jail in the IDOC with at least two phone numbers were able to present to the post-conviction court. And he swore that defense counsel had them in advance of trial. Now, perhaps, and all due respect to my opponent, a very fine gentleman, at P24 of our opening brief, we have the redirect of defense counsel. And on pages 24 and 25, citing directly to the transcript, I think the court will reasonably find that they did not look for any of the witnesses. They were homeless. They were this. They were that. But these are the same people, the same ilk of people, if I may, where the prosecutors are going after drug dealers or people in gangs, and they put up these same type of individuals as individuals that, wait a second, we prefer to put up clergymen and doctors. But these are the people that defendants sought to be with. That's what the prosecutor said. Now, here the defendant's wife and H.T.'s mother had all these folks in their home for a period of seven, six, five, we don't know for sure. How is it that nobody, nobody was contacted? No one. How is it that this defendant is left in a courtroom to testify with no one at his side, meaning other witnesses? Why? I think the answer is at P24 and 25 of the opening brief, referring directly to the transcript. They didn't look. They didn't want to look. He wanted to get it over with, meaning the trial. It's a day-and-a-half trial total, day-and-a-half. Were this court to grant relief, the circuit court would be facing a two-day trial. A man is serving the equivalent of life without parole. That's the equivalent today, serving a 30-year sentence at age 64. So what are you going to do? Not you. This man is entitled, and the law tells you this. What is fundamentally fair was the trial reliable. If the trial results are not reliable and the trial is not fundamentally unfair, then he has shown prejudice. That's what Mr. Jones has shown, and I thank you. Thank you, Mr. Ackerman. Thank you. Thank you, gentlemen. The court will take this matter under advisement. We will take a brief recess. Thank you.